IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| ALLIANCE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 5:08-CV-00214 |
| | ) | |
| JAMES F. TODD, KATHY CARVER, | ) | |
| and ALLENA THOMPSON, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

COMES NOW Plaintiff, Alliance International, Inc. ("Alliance" or "Plaintiff"), by and through the undersigned counsel, and alleges as follows for its Complaint against Defendants James F. Todd ("Defendant Todd"), Kathy Carver ("Carver") and Allena Thomson ("Thompson") (collectively, "Defendants"):

**PARTIES**

1. Plaintiff is a corporation organized under the laws of the State of Oklahoma and maintains its principal place of business in Wake County, North Carolina. Plaintiff is authorized to conduct business in the State of North Carolina.

2. Defendant James F. Todd is, upon information and belief, a citizen and resident of Wake County, North Carolina.

3. Defendant Kathy Carver is, upon information and belief, a citizen and resident of Wake County, North Carolina.

4. Defendant Allena Thompson is, upon information and belief, a citizen and resident of Wake County, North Carolina.

## JURISDICTION AND VENUE

5.  Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-4 above.

6.  Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction as Plaintiff asserts civil claims arising under the Constitution and laws of the United States. Specifically, Plaintiff alleges violations of 18 U.S.C. § 1030, *et seq.*

7.  Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391. At least one named Defendant resides and may be found in the Eastern District of North Carolina.

8.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims arising under North Carolina state law for *inter alia*, conversion, conspiracy and punitive damages.

## FACTS

### I. DEFENDANT JAMES F. TODD

9.  Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-8 above.

10. Plaintiff is in the business of recruiting and placing military veterans and industry experienced candidates with positions in private industry, as well as assisting military veterans to own and run their own private businesses. Plaintiff featured two distinct lines of business focusing on two categories of candidates: (1) Junior Military Officer ("JMO") candidates; and (2) industry experienced candidates.

11. Alliance began operations in 2003 with five individuals: Stuart Keeter, John Young, James Duncan, Stacy Wachtel and John Todd. The founder and Chief Executive Officer of Alliance is John Todd. Defendant is the brother of John Todd.

**Defendant James F. Todd's Role at Alliance**

12. In or around July of 2004, Defendant Todd was hired by John Todd as Vice-President of Alliance. Defendant Todd was also made a partner of Alliance at that time.

13. In or around January of 2005, Defendant Todd was promoted to President of Alliance. He was given exclusive control of the Business Development operations of Alliance. The primary purpose of the Business Development operations was to supervise, control and manage the employer-client relationships between Alliance and its customers. The Business Development team, which Defendant Todd supervised, creates contacts with various multi-national, regional and local companies. Alliance then seeks to identify and recruit acceptable military candidates to these client-employers for a fee.

14. As part of Defendant Todd's job, he was responsible for maintaining confidential information related to the Business Development department. This information included, but was not limited to: (1) client-employer contact information for clients seeking industry experienced candidates, which was kept by individual account executives but forwarded to and stored on the computer issued to Defendant Todd; (2) client-candidate contact information for the industry experienced candidates, which was submitted by the individual candidates to the company and forwarded to Defendant Todd and stored on the computer issued to Defendant Todd; (3) client-employer contact information for clients seeking JMO candidates, which was kept by individual account executives but forwarded to and stored on the computer issued to Defendant Todd; (4) client-candidate contact information for JMO candidates, which was

submitted to the company and forwarded to Defendant Todd by JMO candidates and stored on Defendant Todd's computer; (5) contact information for JMO alumni, candidates who had been previously placed by Alliance into positions with client-employers who sought JMO candidates and who had loyalty to Alliance as a result, which were kept on the computer issued to Defendant Todd; (6) information concerning client leads for either JMO or industry experienced candidates were forwarded by account executives to Defendant Todd and stored on the computer issued to Defendant Todd.

15. As part of Alliance's business model, it hosts hiring conferences where representatives of Alliance client-employers are given the opportunity to meet, network, and potentially interview applicants. These hiring conferences are critically important to Plaintiff's business.

16. Defendant Todd had primary responsibility over the contact, correspondence and follow-up with clients and applicants before, during and following each hiring conference. As such, Defendant Todd was in constant contact with both employer-clients and candidates to arrange follow-up interviews, provide updates, and maintain employer interest in candidates.

17. In the performance of his duties as President of Alliance, Defendant Todd utilized an Alliance laptop computer to store the information regarding client contacts, candidate contacts, business information, financial information and other confidential, proprietary documents and information. This laptop computer was used in interstate commerce and communication.

18. The Alliance laptop computer issued to Defendant Todd also contained the complete business contact list of James Duncan, a former employee and Business Development Manager of Alliance. During his employment, Mr. Duncan was the most successful account

4
Case 5:08-cv-00214-BR   Document 1   Filed 05/09/08   Page 4 of 19

executive at Alliance, and his business contact list was thus important, protected company property. As such, Mr. Duncan was not allowed to take this list with him following his resignation. The list was included on the laptop provided to Defendant Todd in order to help him with his Business Development work on Alliance's behalf.

19. Thus, the Alliance laptop computer issued to Defendant Todd contained the vast majority of the company's business contacts and information, both from James Duncan and from Defendant Todd. Most of the information was stored only on this computer, and cannot be reconstructed or retrieved from any other source.

20. After the client-contacts of James Duncan were given to Defendant Todd, he immediately purchased the domain name genrecruit.com on or about August 31, 2007. Genrecruit.com is the website that Defendant Todd created for Genesis.

### Defendant James F. Todd Forms Genesis Group Recruiting, LLC
### To Directly Compete with Alliance

21. On August 27, 2007, a verbal argument ensued when Defendant Todd abruptly got up during a scheduled weekly staff meeting with his brother, CEO John Todd, and said defiantly that he would be working from home. John Todd informed Defendant Todd that, if he could no longer continue to work for him and he should he leave employment with Alliance, he would not be able to retain the proprietary and confidential client contact and business information on his Alliance laptop computer.

22. On or about October 8, 2007, Defendant Todd filed Articles of Organization with the North Carolina Department of the Secretary of State to form Genesis Group Recruiting, LLC ("Genesis"). Genesis was, and is, in the business of recruiting and placing military veterans and industry experienced candidates with positions in private industry, as well as assisting military veterans to own and run their own private businesses. Genesis is thus a direct competitor of

5
Case 5:08-cv-00214-BR   Document 1   Filed 05/09/08   Page 5 of 19

Alliance. At no point prior to Defendant's resignation did Defendant Todd tell anyone associated with Alliance, other than Alliance employees that he attempted to convince to leave Alliance and accept employment with Genesis, that he planned to start such a competing business.

### Defendant James F. Todd Deletes All Client-Contact and Other Proprietary Information from the Computer Issued to Him by Alliance

23. On or about September 27, 2007 Defendant Todd deleted in excess of two-thousand (2000) files from his Alliance computer. On or about October 15 2007, Defendant Todd used a commercial erasure software program called Net Eraser Trial to wipe out all pertinent data compiled on his Alliance computer. All data on the computer was completely deleted and destroyed, including, but not limited to, the business and candidate contact lists for industry experience and JMO candidates, employers, JMO alumni and potential client leads of Defendant Todd, former Alliance employee James Duncan, and the Alliance account executives who forwarded their contacts to Defendant Todd.

24. Defendant Todd was not authorized to access the computer to take or permanently erase Alliance information in order to use it in direct competition with his former employer.

### Defendant Todd Resigns from Alliance to Form Genesis

25. On or about October 31, 2007, Defendant Todd announced his resignation as President of Alliance.

26. When Defendant Todd returned the Alliance laptop computer to representatives of Alliance following his resignation, the computer contained no business contact information or other proprietary information that was stored on the computer prior to it being issued to Defendant. In fact, the computer contained little or no information or files at all, other than a picture from the profile of an attorney for Womble, Carlyle, Sandridge and Rice, PLLC – an attorney Plaintiff now knows represents Defendant Todd and Genesis.

6

27. Following his resignation, Defendant Todd spoke with Alliance employee Roger Lush and requested that Mr. Lush resign from Alliance and work for Genesis. Defendant Todd represented to Mr. Lush that Genesis would not compete with Alliance, but would instead provide the business development support as a third-party company that he and his Business Development team formerly performed for Alliance as in-house employees.

28. Without disclosing his actions to his brother, John Todd, Defendant Todd also recruited Alliance employee Allena Thompson to resign from Alliance and accept employment with Genesis. Ms. Thompson was a Business Development Manager at Alliance and reported to Defendant Todd at Alliance.

29. Without disclosing his actions to his brother, John Todd, on or around October 31, 2007, Defendant Todd recruited Kathy Carver, who submitted her notice of resignation from Alliance in September of 2007, to work for Genesis. Ms. Carver was a Business Development Manager at Alliance and reported to Defendant Todd at Alliance.

30. Defendants Todd, Carver and Thompson were the primary contacts for Alliance clients. As such, they controlled approximately ninety-five (95) percent of the client-contact information of Alliance on their Alliance computers.

31. Upon information and belief, Defendant Todd communicated and worked in concert with Carver and Thompson in devising a plan to access their respective Alliance computers without authorization, delete all pertinent client-contact and other proprietary business information of Alliance from those computers, resign *en masse* from employment with Alliance and form Genesis, and take that information with them to Genesis to use it in direct competition with Alliance.

**Defendant Todd Demands Money from Alliance**

32.     On or about November 1, 2007, nine (9) days prior to an Alliance hiring conference scheduled for November 10, 2007, Defendant Todd telephoned his brother John Todd. Defendant Todd informed John Todd that he was forming Genesis, a competing business, and that Carver, Thompson and Roger Lush would join him at Genesis. He assured John Todd that between his contacts and the contacts of Carver, Thompson, and Lush, Genesis now controlled approximately ninety-five (95) percent of what had been Alliance's client-contact information. Defendant Todd then demanded that Alliance pay him $30,000.00 per month in exchange for his providing access, communication and contacts with those client-employers. Defendant Todd told John Todd that, if Alliance refused Defendant Todd's demand, he would begin calling Alliance clients and informing them not to attend Alliance's November 10, 2007 hiring conference – actions that would effectively destroy any possibility of Alliance holding a successful conference.

33.     Following the conference call, John Todd and their sister Mary met with Defendant Todd in person. Defendant Todd began the meeting by demanding a check for $30,000.00, while simultaneously threatening to begin calling Alliance clients immediately if John Todd refused. After two hours of discussion, Defendant Todd steadfastly refused to return to Alliance the client-contact information acquired from Alliance computers.

34.     On or about the same day, November 1, 2007, Defendants Carver and Thompson left employment with Alliance. Carver and Thompson confirmed that they would be accepting employment with Genesis.

35.     On or about November 2, 2007, the Alliance partners met to discuss whether to pay the $30,000.00 demanded by Defendant Todd or risk him destroying the hiring conference

scheduled in less than one week. In fear of the financial damage that Defendant Todd might inflict on the company, the Alliance partners tentatively agreed to pay Defendant Todd a one-time payment of $30,000.00.

36. At a meeting between John Todd and Defendant Todd on November 2, 2007, Defendant Todd agreed to provide post-conference support to all of Alliance's pre-existing employer-clients, including employer-client Kinder-Morgan. Alliance, in turn, agreed to pay Genesis two equal payments of $10,000.00.

37. The post-conference support promised by Defendant Todd included not only conducting feedback sessions with client-employers immediately following the conference to determine what applicants the employers were interested in, but also communicating with applicants, employers and attempting to pair qualified applicants for interested employers for up to thirty days following the conference. Such communication is critical to placing applicants in positions.

38. On November 9, 2007, the day before Alliance's November hiring conference was set to begin, representatives of Alliance paid $10,000.00 to Defendant Todd on behalf of Genesis. This payment was made in a desperate attempt to keep Defendant Todd from destroying Alliance's ability to conduct a successful hiring conference for its employer and candidate-clients.

39. Candidate and client interviews for the November hiring conference were scheduled to take place on November 12 and 13, of 2007. At the end of both days, employer-clients provided feedback on candidates to the Alliance staff in designated conference rooms. James Todd met with representatives of Alliance client Kinder-Morgan in their hotel room and provided the feedback given by Kinder-Morgan to Alliance.

9
Case 5:08-cv-00214-BR   Document 1   Filed 05/09/08   Page 9 of 19

40. Despite his agreement to provide post-conference support to Alliance clients following the hiring conference, and despite his acceptance of the first installment of $10,000.00 to provide those services, Defendant Todd failed to stay in communication with Alliance, the employer-clients and the client-candidates. Instead, Defendant Todd refused to communicate with Alliance concerning the applicants and employers. Eventually, Defendant Todd began calling Alliance client-applicants to encourage them not to accept employment with Alliance clients, but to instead seek employment with employers he considered Genesis clients.

41. As a result of his failure to provide post-conference support, Alliance did not pay Genesis the final $10,000.00 installment payment.

42. Defendant Todd has never returned the confidential client-contact lists or other proprietary business information stored on his Alliance computer.

43. Defendant Todd has used the confidential client contact list and other proprietary business information formerly stored on the Alliance computer to directly compete with Alliance by soliciting Alliance customers – both client-candidates and client-employers – to cease business with Alliance and begin working with Genesis for staffing needs.

**Forensic Investigation of Defendant Todd's Alliance Computer**

44. In or around March of 2008, Alliance hired Capitol City Consulting, LLC ("Capitol City"), a computer forensic service, to determine whether information once saved on the Alliance laptop turned in by Defendant Todd was deleted. Capitol City's analysis shows that a program called Net Eraser Trial was installed and used on or about October 15, 2007. This program is used to permanently delete and erase information from a computer, and overwrite the memory containing that information, so that it cannot be retrieved from the computer's hard drive.

45. As of the date of this Complaint, Capitol City's on-going investigation of Defendant Todd's actions has revealed that Defendant Todd deleted, erased and used Net Eraser Trial to permanently overwrite the memory for all files and information saved in the user profiles of Defendant Todd and James Duncan. Other information saved under the profiles of Default User, Administrator and others was also deleted, erased and permanently overwritten using Net Eraser Trial. Because the information has been permanently overwritten using Net Eraser Trial, Capitol City has, as of the date of this Complaint, been unable to retrieve and restore the information or files.

46. As of the date of this Complaint, Plaintiff has spent in excess of $12,000.00 to hire Capitol City to investigate Defendant Todd's actions in accessing, deleting and permanently overwriting the information on the Alliance laptop computer and to attempt to identify and potentially retrieve any information or documents that were removed.

47. The confidential and proprietary client contact and business information removed by Defendants from their respective Alliance computers was, upon information and belief, valued in excess of $400,000.00.

**II.     DEFENDANT KATHY CARVER**

48. Defendant Carver was hired by Alliance on or about April 10, 2006, as a Business Development Manager. As such, Carver had significant client contact and communication, and maintained a significant list of client-contact information.

49. Like Defendant Todd, Carver was issued an Alliance computer to perform her work. During her employment, Carver used the computer to store and manage enormous numbers of prospective clients, current clients and clients who had been billed by Alliance, among other proprietary business information.

50. Carver gave her notice of resignation from Alliance in September of 2007, while CEO John Todd was out of town. At the time she gave her notice of resignation, Defendant Todd instructed Carver not to tell CEO John Todd that she was resigning.

51. When Defendant Todd announced that he was forming Genesis in or around October of 2007, he recruited Carver to join Genesis.

52. Upon information and belief, Carver, having decided to accept employment with Genesis, working in concert with the other Defendants, accessed the Alliance computer issued to her and deleted client information for all prospective clients and leads, as well as other proprietary business information.

53. Carver did not have authorization to access the computer to delete such information.

54. When Defendant Carver returned her Alliance computer to representatives of Alliance following her resignation, the client-contact information for all prospective clients and leads, as well as other proprietary business information that had been saved on the computer's hard drive, had been deleted. The only contacts that remained on Carver's computer were thirty (30) contacts of clients that had previously been billed by Alliance – contacts that Carver knew Alliance had access to through other means.

### III. DEFENDANT ALLENA THOMPSON

55. Defendant Thompson was hired by Alliance on or about January 19, 2007, as a Business Development Manager. Like Carver, Thompson's role as Business Development Manager required her to have significant client contact and communication.

56. Like the other named Defendants, Thompson was issued an Alliance computer to perform her work. During her employment, Thompson used the computer to store and manage

enormous numbers of prospective clients, current clients and clients who had been billed by Alliance, among other proprietary business information.

57. Upon information and belief, on or about October 31, 2007, Thompson, having decided to accept employment with Defendant Todd and Genesis, working in concert with the other Defendants, accessed the Alliance computer issued to her and deleted the client-contact information for all of the Alliance clients she worked with, as well as other proprietary business information.

58. Thompson did not have authorization to access the computer for such purposes.

59. Thompson left employment with Genesis on or about October 31, 2007, in order to work for Genesis.

60. When Defendant Thompson returned her Alliance computer to representatives of Alliance following her resignation, the client-contact information for all Alliance clients as well as other proprietary business information that had been saved on the computer's hard drive had been deleted.

## FIRST CAUSE OF ACTION
### Violation of the Computer Fraud and Abuse Act
### 18 U.S.C. § 1030, *et seq.*

61. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-60 above.

62. Defendants knowingly, with intent to defraud, and without authorization accessed computers used in interstate commerce and communication and protected by 18 U.S.C. § 1030(e)(2)(B) and deleted, removed and destroyed information, documents and/or data contained on said protected computers.

63. Defendants, as alleged herein, knowingly caused the transmission of a program, information, code or command, including but not limited to, Net Eraser Trial, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer within the meaning of 18 U.S.C. § 1030(e)(2)(B).

64. As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial, but believed to exceed $400,000.00.

65. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to recover compensatory damages, injunctive relief and any other equitable relief the Court deems appropriate.

66. Money damages alone will not, and cannot, compensate Plaintiff for the loss of business opportunities that it has suffered as a result of Defendants' wrongful actions. Those actions have and will in the future continue to harm Plaintiff and Plaintiff's business relationships. As a result of Defendants' wrongful actions, Plaintiff has and will have difficulty developing and maintaining client contacts and relationships, which will in turn impact their ability to do business.

67. By continuing their wrongful conduct, Defendants have demonstrated their willingness to continue to engage in acts that violate 18 U.S.C. § 1030, *et seq*. The injury to Plaintiff is immediate and irreparable.

68. Plaintiff asserts that Defendants, unless enjoined, would continue to engage in the conduct alleged herein.

69. There is a likelihood that Plaintiff will prevail on the merits of this action.

70. Should this Court grant injunctive relief to Plaintiff, the burden on Defendants would be slight compared to the injury to Plaintiff if it were not so granted.

71. No injury to Defendants would result from an order requiring them to comport their actions with the law.

72. The granting of an injunction will not violate the public interest. Indeed, injunctive relief would accomplish the objectives of 18 U.S.C. § 1030, *et seq*.

## SECOND CAUSE OF ACTION
### Civil Conspiracy to Violate the Computer Fraud and Abuse Act
### 18 U.S.C. § 1030, et seq.

73. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-72 above.

74. Defendants had an agreement between themselves to intentionally and knowingly access their respective Alliance computers, without authorization, to delete all pertinent client-contact and other proprietary business information of Alliance from those computers, resign *en masse* from employment with Alliance and form Genesis, and take that information with them to Genesis to use it in direct competition with Alliance.

75. Defendants did in fact perform these overt actions pursuant to their agreement.

76. Defendants actions are unlawful or committed in an unlawful way. Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. seq.

77. Defendants actions were malicious and willful and were performed pursuant to a common scheme.

78. Defendants agreement resulted in injury to the plaintiff inflicted by the Defendant-conspirators in an amount to be determined at trial but believed to exceed $400,000.00.

## THIRD CAUSE OF ACTION
### Conversion

79. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-78 above.

80. Defendants assumed and exercised a right of ownership over the personal property of Plaintiff to the exclusion of the rights of Plaintiff. Defendants took the client-contact and other proprietary business information described herein from their Alliance computers, then deleted that information from those computers to the exclusion of Plaintiff's legitimate entitlement to that information.

81. Defendants' actions were not authorized by Plaintiff.

82. As a result of Defendants' unauthorized exercise of a right of ownership over Plaintiff's client-contact and other proprietary business information described herein to the exclusion of Plaintiff's rights, Plaintiff suffered damages in an amount to be determined at trial but believed to exceed $400,000.00.

## FOURTH CAUSE OF ACTION
### Punitive Damages
### N.C. Gen. Stat. § 1D-15

83. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-82 above.

84. Plaintiff adopts, as if fully set forth herein, the allegations of Paragraphs 1-68 above.

85. Plaintiff is entitled to compensatory damages as set forth above.

86. Defendants' actions involved fraud, malice and willful and wanton conduct.

87. Defendants consciously and intentionally disregarded with indifference the rights of Plaintiff.

88. Defendants knew or should have known that their fraudulent, malicious, willful and wanton conduct was reasonably likely to result in injury, damage, and other harm to Plaintiff. Such actions amounted to more than gross negligence.

89. Defendants' fraudulent, malicious, willful and wanton conduct, as described herein, did proximately cause injury, damage and harm to Plaintiff.

90. Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiff is therefore entitled to the recovery of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully prays that this Court:

a) Order a jury trial on all matters alleged herein;

b) Issue a preliminary injunction prohibiting Defendants from utilizing the confidential client contact list or other proprietary business information removed by Defendants from the Alliance computers in violation of 18 U.S.C. § 1030 *et seq.*, including, but not limited to, enjoining Defendants from contacting, calling on, or soliciting, either directly or indirectly, the employer-clients of Plaintiff and enjoining Defendants from using any and all confidential client information rightfully belonging to Plaintiff;

c) Upon final disposition, enter a permanent injunction prohibiting Defendants from utilizing the confidential client-contact list or other proprietary business information removed by Defendants from the Alliance computers in violation of 18 U.S.C. § 1030 *et seq.*, including, but not limited to, enjoining Defendants from contacting, calling on, or soliciting, either directly or indirectly, the employer-clients of Plaintiff and enjoining Defendants from using any and all confidential client information rightfully belonging to Plaintiff;

d) Upon final disposition, enter a permanent injunction requiring that Defendants return the confidential client-contact list or other proprietary business information removed by Defendants from the Alliance computers in violation of 18 U.S.C. §1030 *et seq.*;

e) Request a constructive trust on all funds and/or property of Defendants constituting proceeds or profits made by Defendants in utilizing the client contact list or other proprietary business information removed by Defendants from the Alliance computer in violation of 18 U.S.C. § 1030 *et seq.*, or otherwise wrongful means;

f) Award Plaintiff actual and compensatory damages in an amount to be determined at trial, but expected to exceed $400,000.00;

g) Award Plaintiff punitive damages in an amount to be determined at trial;

h) Award Plaintiff the costs and expenses of this action, including litigation expenses and attorneys' fees pursuant to applicable federal and state law; and

i) Grant such other and further relief as is just and necessary to afford complete relief to Plaintiff.

Dated this the 9th day of May, 2008.

Respectfully submitted

/s/John D. Cole
*Attorney for Plaintiff*
Ogletree, Deakins, Nash, Smoak &Stewart, P.C.
201 S. College Street, Suite 2300
Charlotte, NC 28244
Tel: (704) 342-2588
Fax: (704) 342-4379
E-Mail: john.cole@ogletreedeakins.com
N.C. Bar No. 22573
LR 83.1 Counsel

/s/Michael L. Wade, Jr.
*Attorney for Plaintiff*
Ogletree, Deakins, Nash, Smoak &Stewart, P.C.
201 S. College Street, Suite 2300
Charlotte, NC 28244
Tel:  (704) 342-2588
Fax:  (704) 342-4379
E-Mail: michael.wade@ogletreedeakins.com
N.C. Bar No. 33520
LR 83.1 Counsel