UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-214-BR

| | | |
|---|---|---|
| ALLIANCE INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| JAMES F. TODD, KATHY CARVER, and | ) | |
| ALLENA THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' 29 May 2008 motion to dismiss. The motion has been fully briefed and is ripe for disposition.[1]

I. BACKGROUND

Plaintiff Alliance International, Inc. ("Alliance"), is a corporation organized under the laws of the State of Oklahoma. (Compl. ¶ 1.) Alliance is authorized to conduct business in the State of North Carolina and maintains its principal place of business in Wake County, North Carolina. (Id.) Defendants are all citizens and residents of Wake County, North Carolina. (Id. ¶¶ 2-4.) Alliance "is in the business of recruiting and placing military veterans and industry experienced candidates with positions in private industry[.]" (Id. ¶ 10.) John Todd founded Alliance in 2003, and in July 2004, he hired defendant James Todd, his brother, as Vice-President. (Id. ¶ 12.) Defendant Todd was promoted to the position of President of Alliance in January 2005. (Id. ¶ 13.)

While still employed by Alliance, defendant Todd began making plans to form his own, directly competing business, Genesis. (Compl. ¶¶ 20-22.) In August 2007, defendant Todd purchased the domain name "genrecruit.com," which he ultimately used as the website for Genesis.

---

[1] At the outset, the court notes that defendants' reply brief may be in violation of L. Civ. R. 10.1, EDNC, in that it appears to have been typed in a font size which is smaller than "at least 11 point[s]" as required by the rule. All counsel are reminded to comply with the local rules of this court.

(Compl. ¶ 20.) In October 2007, defendant Todd filed Articles of Organization with the North Carolina Department of the Secretary of State to form Genesis. (Id. ¶ 22.)

In September and October 2007, defendant Todd used a commercial software erasure program to permanently delete over 2000 files from his Alliance-issued computer. (Compl. ¶¶ 23, 44.) The files deleted included business and contact lists for potential and former recruitment candidates, employers, and potential client leads of both defendant Todd and current and former Alliance employees, all obtained in the course of their employment with Alliance. (Id.) On 31 October 2007, defendant Todd resigned as Alliance's President. (Id. ¶ 25.)

Defendant Todd recruited defendants Carver and Thompson, both Alliance employees, to work for Genesis. (Compl. ¶¶ 28-29.) In doing so, defendant Todd "communicated and worked in concert with [defendants] Carver and Thompson in devising a plan to access their respective [Alliance-owned] computers without authorization, [and] delete all pertinent client-contact and other proprietary business information of Alliance from those computers[.]" (Id. ¶ 31.) None of the defendants was authorized to delete this information from their Alliance computers. (Id. ¶¶ 24, 53, 58.)

Alliance filed the instant action on 9 May 2008, asserting a claim of violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq. ("CFAA"), a claim of conspiracy to violate the CFAA, and a state-law claim of conversion. (Compl. ¶¶ 61-82.) Alliance seeks compensatory and punitive damages[2] and both preliminary and permanent injunctive relief. (Id. ¶¶ 83-90; Prayer for Relief.)

In November 2007 and January 2008, Alliance filed complaints in Wake County Superior

---

[2] The court agrees with defendants that punitive damages under N.C. Gen. Stat. § 1D-15 are neither a separate claim as pled in the complaint, nor are they available for Alliance's CFAA claim. (Br. Supp. Mot. at 19 n.6.)

Court against defendants Carver and Todd and Genesis (which is not a party to the instant action), alleging various state law claims[3] and seeking injunctive relief. (Mot., Exh. 2 (state court complaint).) The state court held a hearing on Alliance's motions for preliminary injunction, and granted the motions. (Mot., Exhs. 15-16 (state court orders).) Defendant Todd and Genesis appealed the order against them, and on 14 April 2008, the North Carolina Court of Appeals stayed the order "pending . . . ruling on the petition for writ of supersedeas." (Mot., Exh. 19 (4/14/08 order).) The state court actions remain pending in state court. (Br. Supp. Mot. at 1; Br. Opp. Mot. at 6.)

## II. DISCUSSION

Defendants contend that dismissal of the instant action is warranted because: (1) the court should abstain from hearing the action pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976); (2) Alliance has filed this action in an attempt to reverse the order of the North Carolina Court of Appeals staying the preliminary injunction in violation of "the Rooker/Feldman doctrine;" (3) North Carolina's "claim splitting" doctrine disfavors proceeding with this action; and (4) the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). (Br. Supp. Mot. Dismiss at 2.) The court addresses each of these contentions in turn.

A. *Colorado River* Abstention

In Colorado River, the Supreme Court made clear that the pendency of a similar action in

---

[3] Specifically, as to Genesis and defendant Todd, Alliance has brought claims of tortious interference with contract; tortious interference with prospective business advantage; misappropriation of trade secrets; breach of fiduciary duty; and unfair and deceptive trade practices. (Mot., Exh. 2 (state court complaint against Genesis and defendant Todd).) As to defendant Carver, Alliance has brought claims of breach of contract and tortious interference with prospective business advantage. (Mot., Exh. 3 (state court complaint against defendant Carver).)

-3-

state court does not pose an absolute bar to proceeding with the federal action. 424 U.S. at 817. As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 462 (4th Cir. 2005). Indeed, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, Colorado River, 424 U.S. at 817, and "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not[,]" Chase Brexton, 411 F.3d at 462 (internal quotation and citation omitted).

There is, however, an "extraordinary and narrow exception" to exercising jurisdiction. Colorado River, 424 U.S. at 813. A federal district court may abstain from hearing a case over which it has jurisdiction in "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. (internal quotation and citation omitted). The burden for the party seeking a stay in federal court is high: "the task [of the district court] is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983) (citation and emphasis omitted).

Abstention under Colorado River is only appropriate if the court first determines that the federal and state suits are parallel. Simultaneous federal and state suits are deemed parallel if "substantially the same parties litigate substantially the same issues." New Beckley Mining Corp. v. Int'l Union, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991). The Fourth Circuit has reviewed the similarities between concurrent federal and state suits in three key respects: (1) the parties; (2) the legal issues; and (3) the remedy sought. See, e.g., Great American Ins. Co. v. Gross, 468 F.3d 199, 207-08 (4th Cir. 2006) (reviewing all three in determining that the district court erred in dismissing

-4-

the suit on Colorado River abstention grounds). If the court determines that the actions are parallel, the court must then balance six factors as set forth by the Fourth Circuit to determine whether an "exceptional circumstance" exists. Chase Brexton, 411 F.3d at 463. The factors are:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Id. at 463-64.

In order to find that state and federal actions are parallel, the Fourth Circuit "requir[es] that the parties involved be almost identical." Great American Ins. Co., 468 F.3d at 208. In the instant case, the plaintiff is the same in all actions, and two of the three instant defendants are involved in both the state and the federal actions, and the court therefore concludes that they are sufficiently identical. Likewise, with regard to the remedies sought, the court finds that Alliance is seeking substantially the same damages in the state and federal actions.

However, with regard to the legal claims at issue, "there is no guarantee that the issues [to be] litigated in the . . . state court actions will include the facts necessary for [Alliance] to prove its claim[s]" in the instant action, Great American Ins. Co., 468 F.3d at 208. In the instant action, the central issues to be litigated are the scope of defendants' authority to delete information from Alliance's computers, and whether they conspired to engage in the unauthorized deletion of information. By contrast, the state court actions deal with a far wider scope of factual and legal

-5-

issues, including contract law, trade secrets,[4] whether there was a fiduciary relationship between Alliance and defendant Todd, and potential business opportunities of Alliance and Genesis. See, e.g., Chase Brexton, 411 F.3d at 464 (finding lack of similarity in legal claims where state court Medicaid administrative appeals challenged reimbursements for fiscal years 1996-1998, but federal action challenged reimbursements for fiscal years 1996-2001, as well as a 2001 change in the reimbursement system). Accordingly, the court concludes that the state and federal actions are not parallel.

Even if the court did conclude that they were parallel, in evaluating the six abstention factors, the court finds that the instant action is not an "exceptional case" warranting abstention. Assuming under the third factor that both the state and federal courts will be deciding the issue of the authority of defendants Todd and Carver to delete and/or possess information from Alliance's computers, abstention "is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." Gannett Co., Inc. v. Clark Const. Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) (quotation and citation omitted). The fourth factor, the order in which jurisdiction was obtained, weighs in favor of abstention in light of the progress made in the state court suits. The fifth factor weighs against abstention because Alliance has brought a claim under federal law in this action. See New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America, 946 F.2d 1072, 1074 (4th Cir. 1991) (even where a claim under federal law may be brought in either state or federal court, a federal law claim "militates in

---

[4] By way of example, in the instant action, Alliance alleges that the defendants deleted and/or took proprietary information primarily in the form of its client and candidate contacts . (Compl. ¶¶ 17, 21, 23, 31, 43, 47, 49, 52, 54, 56). In its state court complaint against defendant Todd, Alliance alleges in its claim for misappropriation of trade secrets that its "Confidential Information" includes not only client contact information, but also "vendor lists, . . . current and future projects, operational techniques, financial data, business plans and systems, proprietary processes, designs, marketing and sales plans and strategies, and other information." (Mot., Exh. 2, ¶ 44).

-6-

favor of retention of jurisdiction, since federal law provides the rule of decision on the merits of the . . . claim"). The remaining factors do not have any strong bearing on the abstention analysis, and thus "counsel[] against abstention." Gannett Co., 286 F.3d at 748 n.10 (the court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . [but] rather . . . to ascertain whether there exist exceptional circumstances, the clearest of justifications, to justify the surrender of jurisdiction[,]" and thus factors which are "neutral" indicate that abstention is not warranted (quotations, alterations and citation omitted)). Accordingly, the factors overwhelmingly support retaining jurisdiction in the instant suit.

B. *The Rooker/Feldman Doctrine*

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.
> ***
> When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.
>
> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 292-93 (2005) (citations omitted).

Defendants contend that because the instant suit seeks a preliminary injunction the action

-7-

should be dismissed. (Br. Supp. Mot. at 17.) Alliance contends that the doctrine does not apply because the state appellate court order staying enforcement of the preliminary injunction "is not . . . a final judgment (or any type of judgment) on the merits of Alliances' [sic] state-law claim for injunctive relief." (Br. Opp. Mot. at 18.) The court agrees with Alliance that, not only has no judgment[5] been entered in the state court cases which could trigger the doctrine, Alliance has not pursued preliminary injunctive relief in this court, and thus any potential for conflict is premature. See Davani v. Virginia Dept. of Transp., 434 F.3d 712, 718 (4th Cir. 2006) (if a party "is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply"). Furthermore, if Alliance were to file a motion for a preliminary injunction tomorrow, it would not necessarily mandate dismissal of the entire action; the court could simply decline to consider the issue. See, e.g., Briggman v. Virginia, Dept. of Social Servs., Div. of Child Support Enforcement, 526 F. Supp. 2d 590, 599 (W.D. Va. 2007) (dismissing some of plaintiff's claims under Rooker-Feldman).

C. *North Carolina's "Claim Splitting" Doctrine*

> "[T]he common law rule against claim-splitting is based on the principle that all damages incurred as the result of a single wrong must be recovered in one lawsuit." Bockweg v. Anderson, 333 N.C. 486, 492 (1993). "Where the second action between two parties is upon the same claim, the prior judgment serves as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action." Id. However, if the second action involves a different claim, "the prior judgment serves as a bar only as to issues actually litigated and determined in the original action." Id. "While it is true that a 'judgment is conclusive as to all issues raised by the pleadings,' the judgment is not conclusive as to issues not raised by the pleadings which serve as the basis for the judgment." Id. (citation omitted) . . . . [Additionally, a plaintiff is not] required to have brought a claim of which it could not have reasonably known at the time of the first action.

---

[5] There is still an open question "as to which state court orders are sufficiently final to implicate *Rooker-Feldman*[,]" Field Auto City, Inc. v. General Motors Corp., 476 F. Supp. 2d 545, 552 (E.D. Va. 2007) (collecting cases), but in any event, by its own terms, the appellate court order staying the preliminary injunction pending a hearing was certainly not a final judgment of any sort.

-8-

Country Club of Johnston County, Inc. v. United States Fidelity & Guar. Co., 150 N.C. App. 231, 239-40 (N.C. App. 2002) (parallel citations omitted).

Defendants have not pointed to a single case where the claim-splitting doctrine was applied to two simultaneous legal actions, but regardless, the court finds that the instant state and federal actions are sufficiently different to avoid its application here. Alliance has alleged different types of wrongs committed by the defendants in the actions, even though the wrongs were committed in a common timeframe. See Davenport v. North Carolina Dept. of Transp., 3 F.3d 89, 93 (4th Cir. 1993) (state employee who pursued administrative claim for wrongful discharge was not precluded under North Carolina's claim-splitting doctrine from pursuing a § 1983 claim that his discharge was politically motivated, based on evidence discovered during the administrative proceedings); Bockweg, 333 N.C. at 493 (successive actions alleging separate acts of medical malpractice resulting in separate physical injuries during a continuing course of treatment in a single hospitalization did not give rise to the same claim).

D.  *Dismissal Under Fed. R. Civ. P. 12(b)(6)*

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197 (1994). While the court must accept the plaintiff's factual allegations as true, the court "need not accept the legal conclusions drawn from the facts." Eastern Shore Markets, Inc.

-9-

Case 5:08-cv-00214-BR   Document 23   Filed 07/22/08   Page 9 of 13

v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Similarly, [the court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). A complaint will survive a Rule 12(b)(6) motion to dismiss if it sets forth "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

1. CFAA Claim

Defendants cite to several cases which have dismissed CFAA claims on the grounds that the statute "target[s only] the unauthorized procurement or alteration of information, not its misuse or misappropriation." Shamrock Foods Co. v. Gast, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (quotation and citation omitted) (collecting multiple cases and dismissing CFAA claim against former employee where employee allegedly "emailed numerous documents containing [plaintiff]'s confidential and proprietary information to his personal email account" and then took that information to a competitor); see also International Ass'n of Machinists and Aerospace Workers v. Werner-Masuda, 390 F. Supp. 2d 479, 499 (D. Md. 2005) (dismissing CFAA claim by labor union against former secretary of local union branch alleging that she accessed union's confidential membership list in order to organize a rival labor union; "[t]he . . . CFAA, . . . do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access. Nor do[es its] terms proscribe authorized access for unauthorized or illegitimate purposes."). Alliance points to

-10-

several cases, most notably International Airport Centers, L.L.C. v. Citrin, 440 F.3d 418, 419-21 (7th Cir. 2006), which have recognized a cause of action under the CFAA when a former employee uses a data erasure program to delete company information from a computer. See also ViChip Corp. v. Lee, 438 F. Supp. 2d 1087, 1092 (N.D. Cal. 2006) (awarding summary judgment to employer on CFAA claim where former employee admitted "accessing [employer]'s file server and deleting the contents of computer files that [the defendant] had generated as an employee . . . [and] deleting the contents of [the defendant]'s [employer]-issued laptop computer");[6] Forge Indus. Staffing, Inc. v. De La Fuente, No. 06 C 3848, 2006 WL 2982139, *5 (N.D. Ill. Oct. 16, 2006) (employer stated CFAA claim against former employee with allegations that employee "alter[ed] or destroy[ed] data on his computer to hide his actions and/or the existence of [his competing business], . . . [and] r[an] software that destroyed information on the hard drive or destroyed [employer]'s customer and business information").

In the instant case, the relevant allegations of the complaint contend that defendants "deleted, removed and destroyed information, documents and/or data contained on . . . protected computers" and "knowingly caused the transmission of a program, information, code or command, including but not limited to, Net Eraser Trial, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer" in violation of the CFAA. (Compl. ¶¶ 62-63.) The court concludes that plaintiff has sufficiently pled a CFAA claim.

---

[6] The court notes that it is not clear whether the employee in ViChip used any sort of erasure program; the district court focused on Citrin's holding that an employee who, in accessing a computer, engages in conduct which breaches his duty of loyalty to his employer, has lost any authorization to access the computer and thus violates the CFAA. See ViChip, 438 F. Supp. 2d at 1100 ("when [defendant-employee] decided – the night before his termination and after knowing that he was being asked to step down and give up his duties at [employer] – to delete all information from [employer]'s server and his [employer]-issued computer, he similarly breached his duty of loyalty and terminated his agency relationship to the company" (citing Citrin, 440 F.3d at 420)).

b. Conspiracy Claim

Defendants contend this claim should be dismissed "because there is no well-pleaded factual allegation in the complaint that the other [d]efendants had an agreement with [defendant Todd] to use Net Eraser or any other similar software program on their Alliance computers." (Br. Supp. Mot. at 24.) The complaint alleges that "[d]efendants had an agreement between themselves to intentionally and knowingly access their respective Alliance computers, without authorization, to delete all pertinent client-contact and other proprietary business information of Alliance from those computers, resign *en masse* from employment with Alliance and form Genesis, and take that information with them to Genesis to use it in direct competition with Alliance." (Compl. ¶ 74 (italics in original).) Because the court has found that Alliance has pled a CFAA claim, and finds that Alliance has sufficiently pled "'an agreement between two or more persons to do an unlawful act . . . that results in damages to the claimant[,]'" Jackson v. Blue Dolphin Communications of North Carolina, L.L.C., 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002) (quoting and citing Dalton v. Camp, 135 N.C. App. 32, 42 (1999)), the court also finds that Alliance has pled a conspiracy claim. Cf. MDM Group Associates, Inc. v. Emerald Isle Realty, Inc. No. 2:07-CV-48-D, 2008 WL 2641271, *5-6 (E.D.N.C. 2008) ("There is no independent claim for civil conspiracy in North Carolina, and a civil conspiracy claim requires a viable underlying predicate claim . . . . [Because the] plaintiff's Lanham Act claim fails . . . . , [the] defendants' motions to dismiss the civil conspiracy claim are granted to the extent the civil conspiracy claim is premised on the Lanham Act." (citations omitted)).

3. Conversion Claim

Defendants contend that this claim fails because North Carolina law does not recognize a

claim for conversion of intangible interests. (Br. Supp. Mot. at 24.) The court agrees. "In North Carolina, only goods and personal property are properly the subjects of a claim for conversion. A claim for conversion does not apply to . . . intangible interests such as business opportunities[.]" Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414 (2000). The property at issue in the complaint is "client-contact and other proprietary business information . . . [that had been stored on] Alliance computers[,]" (Compl. ¶ 80), and thus the court concludes that Alliance has failed to state a claim for conversion.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is ALLOWED IN PART and DENIED IN PART, and Alliance's claim for conversion is DISMISSED.

This 22 July 2008.

                                              W. Earl Britt
                                              Senior U.S. District Judge

aii/jft/tec